## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BOW H. BUSHYHEAD and | ) | Case No. 15-CV-89-JED-PJC |
| | ) | |
| D. LYNN BUSHYHEAD, | ) | Appeal from Bankruptcy Court |
| | ) | Bankr. No. 13-12897-M |
| Debtors. | ) | Chapter 7 |

### <u>REPORT AND RECOMMENDATION</u>

This is an appeal from the decision of the Bankruptcy Court denying the U.S. Trustee's Motion to Dismiss the Debtors' bankruptcy filing under 11 U.S.C. § 707(a) "for cause" based on the Debtors' alleged bad faith. Pursuant to G.O. 05-09 of the Northern District of Oklahoma, all appeals from U.S. Bankruptcy Court are automatically referred to the assigned U.S. Magistrate Judge. This matter was referred to the undersigned U.S. Magistrate Judge for recommended disposition pursuant to 28 U.S.C. § 636(b)(3). *Hall v. Vance*, 887 F.2d 1041, 1045-46 (10th Cir. 1989) (finding that referral of bankruptcy appeal to Magistrate Judge for advisory hearing was proper); *Derringer v. Chapel*, 279 Fed. Appx. 641, 644 (10th Cir. 2008) (unpublished) (bankruptcy appeal is properly referred to magistrate judge pursuant to 28 U.S.C. § 636(b)(3)).

Jurisdiction herein is premised on 28 U.S.C. § 158.

In reviewing the Bankruptcy Court's order, the District Court examines findings of fact for clear error and conclusions of law *de novo*. *Warren v. Ote*, 512 F.3d 1241, 1248 (10th Cir. 2008) (citation omitted). Additionally, "the

Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor." *Id.*

## I.
## FACTUAL BACKGROUND

Neither party takes issue with the Bankruptcy Court's "Findings of Fact" [Dkt. #14-1 at 45-50], which are summarized below.

Debtors Bow H. and D. Lynn Bushyhead are husband and wife. He is employed in the trucking industry and, prior to March 2013, worked for Lone Star Trucking ("Lone Star") as a terminal manager. In 2013, he became vice president of sales for Stone Trucking. She is a retired consumer price analyst formerly employed by the U.S. Department of Labor.

In 2007, the Bushyheads formed BB&D Concepts, LLC (the "LLC"), an Oklahoma limited liability company created to operate Planet Beach Contempo Spa (the "Spa"). The Bushyheads invested some $86,000 of their own money in the venture and the LLC borrowed $345,400 (the "Spa Loan") from Comerica Bank ("Comerica"). The Bushyheads personally guaranteed the Spa Loan. In addition, the U.S. Small Business Administration (the "SBA") guaranteed 80 percent of the Spa Loan. Under its original terms, the Spa Loan required monthly payments of approximately $4,100.

The Spa opened for business in November 2008 and lost money from the start – on average between $4,000 and $10,000 per month. The LLC negotiated several loan modifications with Comerica and reduced the amount of the Spa Loan by almost $100,000. When the Spa ceased operations on February 1, 2013, the LLC was approximately five months in arrears on its

2

loan obligations and since then, neither the LLC nor the Bushyheads have made any payments on the Spa Loan.  At that point, Bow had take-home pay of approximately $8,800 per month (excluding bonuses and any income he may have earned outside his Lone Star Trucking employment) and Lynn collected retirement income of approximately $1,350 per month.

Since March 2013, Mr. Bushyhead has been employed by Stone Trucking ("Stone").  His current salary is about $350,000 per year.  Stone also gave him a "signing bonus" of $62,100 and reimbursed him for all expenses he incurred as a member of the Oaks Country Club ("Oaks").  In 2013, as a result of the settlement of litigation with Lone Star, he received an additional six months' salary.  Mrs. Bushyhead continued to receive retirement benefits from the U.S. government.  Thus, from February 22 to December 31, 2013, the Bushyheads had total income from all sources of $395,537.94.  During this time, no payments were made on the Spa Loan.

On or about March 21, 2013, counsel for Comerica sent counsel for the Bushyheads the forms necessary for Comerica to consider an offer to compromise the Spa Loan.  The Bushyheads made no attempt to negotiate a settlement with Comerica in 2013.  Lynn testified this was because she did not believe Comerica would negotiate a settlement and Bow testified he did not use any of his income to pay towards the Spa Loan because the Spa "had been taking [money] from the family for years," the Bushyheads "were tired of supporting a failing business that was never going anywhere" and he wanted to pay his daughter's student loans and for his son's medical school education.

As the Bankruptcy Judge put it, during the period of February 21, 2013 through December 21, 2013, "money flowed out of the Bushyhead household as quickly as it came in." [Dkt. #14-1 at 47].  The Bushyheads spent a total of $15,016.19 on furniture; $2,634.00 on jewelry; $12,784.37 on vacations and travel; $24,374.03 on Oaks Country Club reimbursement (including amounts reimbursed by Stone); and $29,791.19 on food and dining.  Additionally, Bow leased a 2013 Mercedes 550V sedan valued at $101,430 from Jackie Cooper Imports (the "Car Lease"), with $11,041.84 due on the signing of the Car Lease and monthly payments of $1,368.86 for 24 months.  In the fall of 2013, Lynn acquired two horses – one for $5,500 and the other for $3,250 – for recreational purposes.  The monthly cost of boarding the horses is approximately $500.

On May 14, 2013, Comerica filed suit to collect the Spa loan in Tulsa County District Court, naming as defendants the LLC, the Bushyheads and a revocable trust held by the Bushyheads.   On December 13, 2013, judgment was entered against the LLC in the state court action in the principal amount of $253,792.55, plus interest in the amount of $5,153.51, late charges of $4,148,89, and interest accruing at the rate of $38,24271 per day thereafter.

The Bushyheads filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on December 11, 2013.  Patrick J. Malloy III ("Malloy") is the Trustee in the case.  The original bankruptcy schedules listed $825,169 in assets and $332,152 in liabilities.  Of the $825,169 in assets, $789,196, or 95.64 percent, were claimed as exempt.  The $265,000 guaranty of the Spa represents 79.8 percent of their total indebtedness.  The Spa Loan constitutes

4

business debt.  The only scheduled consumer debts consist of approximately $14,000 in credit card debt and $5,500 in student loans for the Bushyheads' children.  The Bushyheads, in their schedules of current monthly income and expenses, originally listed $21,096 in income and $16,004 in expenses, leaving $5,092 in monthly net income.  A later amendment to the schedules eliminated a monthly credit card payment of $684, thereby increasing their monthly net income to $5,776.  Upon examination, Bow testified that the current net monthly income was lower due to a voluntary increase in retirement contributions and an increase in health insurance premiums of approximately $600 per month.

The original schedules and statement of financial affairs contained several errors.  On January 17, 2014, the schedules were amended to include an additional $219,603 in unsecured debt – all related to the Spa.  The SBA was listed as the single largest creditor based on its guaranty of the Spa Loan. On February 19, 2014, the Bushyheads amended their schedule of expenses to delete the $684 monthly credit card payment of $684 noted above.  They also disclosed an interest in a revocable trust and the sale of their residence in 2012.  On March 20, 2014, the statement of financial affairs was amended to disclose litigation between Bow and Lone Star Trucking, and to more fully disclose the Bushyheads' income in 2011, 2012 and 2013.  On July 8, 2014, the Bushyheads amended their schedule of financial affairs in order to disclose gifts made to their children in the year prior to the filing of their bankruptcy

case, their membership in the Oaks and Stone's reimbursement of Bow's expenses at the Oaks.

In their bankruptcy schedules, the Bushyheads listed a savings account with a balance of $15,000.  At the first meeting of creditors, Malloy was advised that approximately $2,000 had been removed from the account after the bankruptcy case filing.  Malloy demanded the $2,000 be returned and the entire $15,000 be surrendered to him as trustee.  The funds were subsequently turned over to Malloy.

On May 29, 2014, the Office of the United States Trustee (the "UST") filed a motion to dismiss the bankruptcy case pursuant to 11 U.S.C. § 707(a), alleging it had been filed in bad faith, as evidenced by:  (1) the failure of the Bushyheads to make an effort to repay the Spa Loan in the months before filing of the bankruptcy case; (2) the fact that the Bushyheads presently have significant disposable income available for making payments to creditors; and (3) the Bushyheads' failure to voluntarily make full and complete disclosures in their bankruptcy schedules, making the disclosures only after the UST demanded additional information that exposed the errors in the original schedules and statement of financial affairs.

The Bankruptcy Court denied the motion and subsequently entered an order discharging all of the Bushyheads' debts owed to their creditors.  [Dkt. #4-1 at 7, Br. Dkt. ##56, 58].[1]

---

[1]  In doing so, it concluded that (1) Congress intended a debtor's ability to pay debts should not be a cause for dismissal under § 707(a) and (2) most cases dismissed under § 707(a) under the guise of "bad faith" are dismissed primarily

The UST appealed the Bankruptcy Court's denial of the motion to dismiss and its order discharging the Bushyheads' debts. [Dkt. #3].

## II.
## ANALYSIS

The Bankruptcy Code provides a mechanism for dismissing a Chapter 7 case or converting it to a Chapter 11 or 13 filing under certain circumstances. 11 U.S.C. §707(b) deals with situations where the debts at issue are primarily consumer debts.  This section provides a detailed mathematical formula that courts are to use to determine whether a debtor has the ability to pay a significant portion of his unsecured claims.  Section 707(b), though, is not at issue in this appeal; rather, §707(a) is the focus of the inquiry.

And Section 707(a) provides no tidy formulas.  Instead, it states:

(a) The court may dismiss a case under this chapter only after notice and a hearing and **only for cause**, including—

    (1)    unreasonable delay by the debtor that is prejudicial to creditors;

    (2)    nonpayment of any fees or charges required under chapter 123 of title 28; and

    (3)    failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

---

due to the debtor's ability to pay pre-petition debt. [*Id.* at 67].  It further concluded that a bankruptcy case should be dismissed "for cause" under § 707(a) only under one of the enumerated subsections or "where the debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7.'" [*Id.* at 69, citing *In re Kane & Kane*, 406 B.R. 163, 168 (Bankr. S.D. Fla. 2009)].

11 U.S.C. §707(a) (emphasis added).

Courts agree that the three examples of "cause" contained in §707(a) are illustrative, not exhaustive.  *See In re Piazza*, 719 F.3d 1253, 1261 (11th Cir. 2013); *In re Smith*, 507 F.3d 64, 72 (2d Cir. 2007); *In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000); *In re Huckfeldt*, 39 F.3d 829, 831 (8th Cir. 1994); *In re Zick*, 931 F.2d 1124, 1126 (6th Cir. 1991).  Thus, courts are not limited to these three examples in determining whether there is cause to dismiss a Chapter 7 case.

However, the unanimity of opinion on § 707(a) stops there.  Courts have struggled with the question of what constitutes "for cause," whether the "good faith" or "bad faith" of the debtor matters and, if it does matter, what conduct comprises "bad faith."  Indeed, some have looked for inspiration outside the law.  *See*, Judge Posner's discussion of Guy de Maupassant's short story "The Necklace" in *In re Schwartz*, 799 F.3d 760, 763 (7th Cir. 2015)  or Judge Grant's discussion of Van Gogh's painting "The Starry Night" in *In re Tallman*, 397 B.R. 451, 454-55 (Bankr.N.D.Ind. 2008).  Clearly, this issue has more than a few judges and scholars scratching their heads.

## A. Does § 707(a) Impose a Duty of "Good Faith" on Debtors?

At one end of the spectrum,   the United States District Court for the District of Colorado has answered this question with a flat "no," stating that § 707(a) "does not include an implicit good faith requirement in the context of the dismissal of Chapter 7 bankruptcy liquidation proceedings." *In re Etcheverry*, 242 B.R. 503, 504 (D. Colo. 1999)  *See also In re Landes*, 195 B.R. 855, 862

(Bankr. E.D. Penn. 1996) (concluding there is no good faith filing requirement in Chapter 7 cases); *In re Adolph*, 441 B.R. 909, 911-12 (Bankr. N.D. Ill. 2011) (same).

On the other end of the spectrum, the Fifth Circuit has held that a debtor's pre-petition bad faith in the bankruptcy process *can* serve as the basis for dismissal under § 707(a), reasoning:

> This is no more than acknowledgment in the chapter 7 context of what has long been recognized:  "Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."

*In re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016) (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Co. (In re Little Creek Dev. Co.*), 779 F.2d 1068, 1071 (5th Cir. 1986)).

Other decisions fall somewhere in between.  On the restrictive end, the Ninth Circuit has concluded  that "bad faith per se can properly constitute 'cause' for dismissal of a Chapter 11 or Chapter 13 petition" but *not* for dismissal under § 707(a).  *In re Padilla*, 222 F.3d 1184, 1193 (9th Cir. 2000). Accordingly, the court "discarded the 'bad faith' label in favor of simply examining the actions of the debtor" to determine whether his pre-petition conduct – running up credit card debt in advance of filing bankruptcy petition (also known as a "credit card bust-out") –  provided "cause" for dismissal under § 707(a).  *Id.*  The court concluded it did not.  *Id.*

Likewise, the Eighth Circuit has held that while "some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized

as bad faith . . . framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7." *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994).  Citing *In re Kahn*, 172 B.R. 613, 620-25 (Bankr. D. Minn. 1994), it adopted a "narrow, cautious approach to bad faith," holding that bad faith under § 707(a) should be limited to "extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction."  *Id.* [2]

The Eleventh Circuit has taken a less restrictive approach to § 707(a) dismissal.  The court examined both legal and non-legal dictionary definitions of the word "cause" and concluded "the ordinary meaning of 'cause' is *adequate or sufficient reason*." *Piazza v. Neuterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1261-62 (11th Cir. 2013) (emphasis added).  Applying this definition, it held that prepetition bad faith is an adequate or sufficient reason for dismissal under § 707(a). *Id.* at 1262.  The court reasoned that "bad-faith bankruptcy filings significantly burden the legal system in general and bankruptcy courts in particular," and noted that bankruptcy courts can sanction litigants for filing documents for "any improper purpose" under Fed.

---

[2] In *Huckfeldt*, the appellate court found the bankruptcy court had properly dismissed the debtor's case "for cause" under § 707(a) because the debtor's conduct—filing  a bankruptcy petition for the purpose of frustrating a divorce decree and forcing his ex-wife into bankruptcy, and deliberately accepting a job that paid substantially less than the income he could have earned as a surgeon during the pendency of his Chapter 7 proceeding—"made him anything but an 'honest but unfortunate debtor' needing Chapter 7 relief."  *Id.* at 832.

R. Bankr.P. 9011(b)(1) and  can also "take[e] any action . . . necessary or appropriate . . . to prevent an abuse of process" under 11 U.S.C. § 105(a). *Id.* The court stated:  "[W]e see no reason why prepetition bad faith should not constitute an adequate or sufficient reason for dismissal.  To hold otherwise would 'create[ ] the appearance that such an abusive practice is implicitly condoned by the [Bankruptcy] Code." *Id.* (quoting *Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 441 (2d Cir. BAP 1997)).

In *Zick*, the Sixth Circuit, citing, *inter alia*, *Khan*, stated, "A lack of good faith . . . has been recognized in a number of bankruptcy cases as a valid cause of dismissal under § 707(a)."  931 F.2d at 1126-27.

The Fifth Circuit, in *Krueger*,  recently held that courts have broad authority to determine what is cause for dismissal under § 707(a).  812 F.3d at 370. The court stated, "Cause is any reason cognizable to the equity power and conscience of the court or constituting an abuse of the bankruptcy process," including "prepetition bad-faith conduct, postpetition bad faith conduct, or petitions that simply serve no legitimate bankruptcy purpose." *Id.* (citations omitted).  *See also In re Schwartz*, 7909 F.3d at 763-64 (rejecting debtors' argument that the only grounds for dismissal under § 707(a) are procedural).

In summary, review of case law confirms that "most courts accept the proposition that a debtor's bad faith can constitute 'cause' for the dismissal of a case under § 707(a)."  *In re Tallman*, 397 at 454 (cataloguing cases).  Based on the weight of authority, the undersigned concurs that the Bushyheads'

petition can be dismissed for cause under § 707(a) if the UST can establish bad faith on their part.

### B. What Constitutes Bad Faith or Cause Under § 707(a)?

In this case, the Bankruptcy Court concluded that the debtors' petition could be dismissed "for cause" under § 707(a) only under one of the enumerated subsections or "where the debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7." [Dkt. #4-1 at 188] (citing *Kane v. Kane*, 406 B.R. 163, 168 (Bankr. S.D. Fla. 2009)). Applying this standard, and drawing on the legislative history of § 707, it held that the debtors' ability to pay the debt was not a proper consideration in the cause analysis.

The Trustee takes issue with this definition, contending that because the Code does not define "cause," the term must be given its ordinary meaning, which in this context means a "good or sufficient reason," and that factors related to the debtors' ability to pay are properly considered.   [Dkt. #14 at 28].

As the court in *Tallman* commented, "Recognizing that bad faith may justify the dismissal of a Chapter 7 case is one thing, trying to identify or articulate what bad faith actually is in the context of a Chapter 7 filing is a much more problematic endeavor."  *Id.*  Not surprisingly, courts disagree sharply about the proper standard.

On one end of the spectrum are the cases in which courts have held that the debtor's ability to pay should not be considered in the good faith analysis. These cases, including *Kane*, *Kahn* and *Huckfeldt*, focus on the legislative

12

history of § 707 in concluding that "noneconomic factors" are not appropriate

for consideration in the good faith analysis.

In *Kane*, the court stated:

> In a Chapter 7 case . . . the potential bases for dismissal on
> grounds of bad faith are narrow. "The ultimate question [is]
> whether the petition was filed with the intent and desire to obtain
> the relief that is available under a particular chapter of the
> Bankruptcy Code, through the means that Congress specified, or
> whether the debtor is pursuing some other goal." In Chapter 7, a
> case should be dismissed on account of bad faith *only where the*
> *debtor has taken advantage of the court's jurisdiction in a manner*
> *abhorrent to the purpose of Chapter 7.*

406 B.R. at 168 (quoting *Tallman*, 397 B.R. at 456) (emphasis added).

The court in *Kahn* traced the legislative history of § 707 and concluded

that "[i]n passing on a motion for dismissal under § 707(a) . . . the Bankruptcy

Court should exclude "any consideration that goes to the debtor's financial

means." 172 B.R. at 623-24.  It roundly criticized decisions basing dismissal on

the debtor's ability to pay, stating, "These decisions are fundamentally flawed

in their analysis . . . because the question of whether a Chapter 7 debtor could

meet dischargeable obligations in whole or in part from future resources is

irrelevant to the motion under § 707(a)." *Id.*  The court described the

appropriate "good faith" inquiry as follows:

> "Good faith" and its absence necessarily being subjective factors, the
> Court should look first at the debtor's manifested attitude toward the
> integrity of the bankruptcy process.  The real question should be whether
> the debtor is in bankruptcy with an intent to receive the sort of relief that
> Congress made available to petitioners under the chapter in question—
> subject, of course, to any statutory limitations on the extent of that relief
> – and is willing to responsibly carry out the duties that Congress imposes
> on debtors as the cost of receiving such relief.

With the subject so identified, bad faith in the filing of a Chapter 7 petition would be evidenced by a pervasive and orchestrated effort on the part of the debtor to obtain the benefits of a bankruptcy filing while at the same time intentionally and fraudulently taking action to avoid any of the detriments. Such an effort might involve an intention to file solely to interpose the automatic stay of 11 U.S.C. § 362(a) against pending litigation or foreclosure, without a concomitant acceptance of the statutory duties of financial disclosure, cooperation with the trustee, and surrender of non-exempt assets.   It might also be prompted by a vindictive motivation to use bankruptcy solely as a "scorched-earth" tactic against a pressing creditor or opponent in litigation.

172 B.R. at 625 (citations omitted).

The Eighth Circuit, in *Huckfeldt*, agreed with "the narrow, cautious approach to bad faith adopted in *Kahn*," noting it was consistent with the view urged in 4 *Collier on Bankruptcy* ¶ 707.03, at 707-10-11 (15th Ed. 1992):

Bad faith may be found when the debtor has a frivolous, noneconomic motive for filing a bankruptcy petition, when there is a sinister or unworthy purpose, or when there is an abuse of the judicial process. That the debtor is merely taking advantage of its legal rights is not, by itself, sufficient to support a finding of bad faith.

39 F.3d at 832, n. 4.

The court  upheld the bankruptcy court's dismissal of the debtor's Chapter 7 petition, finding the debtor had filed the petition for the purpose of frustrating a divorce decree and pushing his ex-wife into bankruptcy, and had manipulated his earnings "to ensure that the Chapter 7 proceeding would achieve these *non-economic motives*." *Id.* (emphasis added).

Some courts, however, have explicitly held that the debtor's income *may* be considered as a factor in the "for cause" analysis.  In *Perlin*, the Third Circuit stated:

> While the legislative history makes it clear that a debtor's ability to repay his debts is inadequate cause for dismissal, we do not read the history as prohibiting a bankruptcy court from considering a debtor's substantial income and expenses in determining whether the debtor filed his bankruptcy petition in good faith. The legislative history established only that a debtor's ability to repay is an invalid cause for dismissal.  It does not indicate that a bankruptcy court must ignore the economic reality of a debtor's financial situation in determining whether a valid cause for dismissal exists.

497 F.3d at 372.  *See also In re Woodburn*, 2008 WL 2777352, at *5  (Bankr.

E.D. N.C., July 17, 2008) (stating that "[t]he court may consider the debtor's

ability to repay debts, but ability to repay debts alone is not sufficient grounds

to dismiss a case under § 707(a));  *In re: Baird*, 456 B.R. 112, 117 (Bankr. M.D.

Fla. 2010) (acknowledging that ability to pay creditors may not constitute the

exclusive or primary factor in the good faith analysis but including it in a list of

factors to be examined to determine whether debtors acted in bad faith in filing

a Chapter 7 petition).

> In *Krueger*, the Fifth Circuit adopted more expansive view, stating:

> Courts have broad authority to determine what is cause for dismissal under § 707(a):  [C]ause is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process.

812 F.3d at 370.[3]

---

[3] Nevertheless, the debtor's ability to pay was not a factor in *Krueger*.  Instead, the court's focus was on debtor's conduct before his Chapter 7 filing and during pendency of the case.  The bankruptcy court found that the debtor had filed bankruptcy to thwart a state criminal contempt proceeding against him; because state court civil litigation over a business in which he owned an interest was going badly; and to provide him "cover" to retake control of the company.  *Id.* at 375.  The appellate court concluded "These 'non-economic motives' are 'unworthy of bankruptcy protection." *Id.* (quoting *Huckfeldt*, 39 F.3d at 833).  Furthermore, the court concluded that once the Chapter 7 case was commenced, Krueger "engaged in conduct designed to manipulate the

The most expansive view, which the UST advocates, is set forth in *Piazza*, where the Eleventh Circuit adopted "the ordinary meaning of 'cause,' as authorizing dismissal when adequate or sufficient reason exists for such action." 719 F.3d at 1262.  Noting that "[b]ad faith does not lend itself to a strict formula," the court endorsed a "totality of the circumstances" approach that included inquiry into, *inter alia*, whether the debtor failed to repay his creditors or make life-style adjustments despite his debts.  719 F.3d at 1273-74.  It explained:

> The totality-of-the-circumstances inquiry looks for atypical conduct . . . that falls short of the honest and forthright invocation of the [Bankruptcy] Code's protections. In making that determination, bankruptcy courts must, as they so often do, sift the circumstances surrounding [a] claim to see that injustice or unfairness is not done. Under this inquiry, bad faith is ultimately evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of provisions, purpose, or spirit of the Bankruptcy Code.

*Id.* at 1271-72 (quotation marks and citations omitted).

The appellate court concluded the bankruptcy court properly considered the fact that the debtor had filed bankruptcy "to avoid" paying a "large single debt" arising from a state-court judgment he evaded for more than two years; that in spite of this debt, he continued paying debts of insiders and transferred thousands of dollars every month to his wife; that he continued pay his great aunt's mortgage; that he refused to make life-style adjustments; that he failed to pay his creditors despite having sufficient resources to repay at least a

---

proceedings to his own ends, including false filings, false testimony, and witness intimidation, " and that "[h]is duplicitous behavior is exactly the sort of conduct contemplated by most courts as giving cause for dismissal under § 707(a)."  *Id.*

portion of his debts. *Id.* at 1273-74.  *See also Zick*, 931 F.2d at 1127-28 (listing factors relied upon by the bankruptcy court in considering the bad faith issue, including the debtor's failure to make significant lifestyle adjustment and "manipulations which reduce the creditors in the case to one"); *In re McGuire-Pike*, 2015 WL 4181019, at *3 (Bankr. D. N.M. July 10, 2015); *In re Snyder,* 509 B.R. 945, 949 (Bankr. D. N.M. 2014).

The Seventh Circuit, in *Schwartz*, applied the *Piazza* "totality of the circumstances" approach and concluded the bankruptcy court properly dismissed debtors' Chapter 7 petition *solely* on the basis of "their failure to use any of their earnings or assets to pay any part of the debt they owed [their creditor]."  799 F.3d at 763-64 (7th Cir. 20150).  Citing  *Zick*, the court stated, "[W]e agree that an unjustified refusal to pay one's debts is a valid ground under 11 U.S.C. § 707(a) to deny a discharge of a bankrupt's debts."  *Id.* at 764.

The undersigned believes, however, that the approach advocated by *Piazza*  and *Schwartz* improperly ignores the legislative history of § 707(a). Congress, in enacting § 707(a), stated:

> This section does not contemplate . . . that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal.

H.R.Rep. No. 595, 95th Cong., 1st  Sess. 380 (1977); S. Rep. No. 989, 95th Cong., 2nd Sess. 94 (1978).

As one court has commented, "It is difficult to contemplate how Congress could more emphatically have stated that the debtor's net worth or future

prospects is not "cause" as the word is used in Section 707 for dismissal." *In re Goulding*, 79 B.R. 874, 876 (Bankr. W.D. Mo. 1987) (denying a § 707(a) motion to dismiss filed by the Trustee and the FDIC that was based solely on the fact that the debtor received substantial income from spendthrift trusts and would soon receive the corpus of one of the trusts).[4]

Further, as the court in *Kahn* noted, in 1984, Congress added 11 U.S.C. § 707(b), and amended § 707(b) in 1986, to provide for dismissal of Chapter 7 cases filed by individual debtors whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7.  172 B.R. at 623.  Applying principles of statutory construction, the court stated:

> In enacting § 707(b), Congress clearly was speaking to the issue of those debtors in Chapter 7 whom it thought should not be in liquidation through bankruptcy, because they would have the resources to pay their creditors in the future.  It did so by enacting a narrowly-drawn statute. The power to invoke that statute is granted to only two participants in the bankruptcy process.  Congress limited the class of petitioners whose cases would come under such scrutiny, to debtors whose financial distress arose from non-business transactions.

> Under the canons previously noted, this statute must be deemed to be Congress's word as to the scope of the remedy of dismissal on a particular ground: only pursuant to the authority of this statute, and subject to its strictures, can the Bankruptcy Court dismiss a Chapter 7

---

[4] The court in *Goulding* commented that "a person with an income of $12,000.00 per month, due to receive some $200,000.00 within three months, hardly fits the Court's vision of the "honest but unfortunate" debtor the Supreme Court visualized in *Brown v. Felsen*, 422 U.S. 127, 99 .Ct. 2205, 60 L.Ed.2d 767 (1979)." *Id.* at 875.   However, it denied the motion to dismiss "in full recognition that it is the duty of a Judge to apply the laws as written by Congress, rather than to substitute personal abstract concepts of justice and morality, to the cases it hears." *Id.* at 876.  Similarly, while the undersigned may view the Bushyheads' conduct as morally distasteful, that is not the legal standard for cause.

> case on a finding that a debtor could pay his or her debts in whole or in part from future personal income.  The more generally-defined remedy for dismissal for "cause" under § 707(a) simply cannot lie on the same set of facts.

172 B.R. at 624.

The courts in *Kane*, *Khan* and *Huckfeldt* all examined  legislative history and intent in conducting their good faith/cause analyses.  Based on this, all three concluded that ability to pay should not be considered as a factor in the analysis.  The courts in *Khan* and *Huckfield* focused on conduct evidencing "noneconomic" motives on the part of debtors.  The court in *Kane* did not use the precise term "noneconomic motives," but it identified the "ultimate question" as "whether the petition was filed with the intent and desire to obtain the relief that is available under a particular chapter of the Bankruptcy Code, through the means that Congress ha specified, or whether the debtor is pursuing some other goal."  406 B.R. at 168.  Viewed in the context of legislative history and case law, this approach appears to be synonymous with the "noneconomic motives" inquiry.

The undersigned believes that by eschewing "ability to pay" as a basis for dismissal, but permitting dismissal for conduct evidencing "noneconomic motives," the approach taken in these three cases most closely adheres to the Congressional purpose of  § 707(a).   Accordingly, the undersigned concludes the bankruptcy court applied the correct legal standard for determining whether the debtors acted in bad faith.

### C. Factual Determination of Bad Faith

Having determined the Bankruptcy Court applied the proper legal standard in evaluating the good faith of the debtors, the court reviews for clear error the bankruptcy court's finding that the Bushyheads did not act in bad faith. *Warren*, 512 F.3d at 1248.  "A factual finding is clearly erroneous only when this Court, after reviewing all of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Piazza*, 719 F.3d at 1273.

The Bankruptcy Court concluded that a bankruptcy case should be dismissed "for cause" under § 707(a) only under one of the enumerated subsections or "where the debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7." [Dkt. #14-1 at 69].  Having found that almost all of the conduct complained of by the Trustee related to the debtors' ability to pay, it stated, "On that issue, Congress has spoken.  The ability to pay is not cause for dismissal under § 707(a)." [*Id.*]. There is no clear error in this finding.[5]  Accordingly, the undersigned recommends the Bankruptcy Court's order denying the Trustee's motion to dismiss be affirmed.

### D. Grant of Discharge

Under Bankruptcy Rule 4004(c)(1)(D), the Bankruptcy Court may not grant a discharge of a chapter 7 case while a motion to dismiss the case under § 707 is pending. The Bankruptcy Court denied the Trustee's Motion to

---

[5]  Nor does the apparent sloppiness with which the Bushyheads prepared their Schedules, *see* p. 5 *infra*, change the undersigned's assessment of cause under § 707(a).

Dismiss on January 21, 2105, and entered judgment the same day.  [Dkt. #4-1, Bankruptcy Court Docket sheet, Dkt. #58-59].  The following day, it entered an Order Discharge Debtor. [*Id.*, Dkt. #58].

Citing, *inter alia*, *Mackenzie v. Engelhard Co.*, 266 U.S. 131, 142-43 (1924), the Trustee asserts the Supreme Court views a suit as "pending until the case is disposed of," and argues that  no discharge should have been entered until the Trustee's bad faith claims were resolved through all levels of appeal.  [Dkt. #14 at 46].

In its definition of  "pending," Black's Law Dictionary states that "an action or suit is "pending" from its inception until the rendition of final judgment."  *See In re Close*, 384 B.R. 856, 871 (Bankr. D. Kan. 2008). Applying this definition, the undersigned concludes that the case ceased to be "pending" upon entry of the judgment; therefore, the discharge was properly entered.

## CONCLUSION

For the reasons set forth above, the undersigned recommends that the decision of the Bankruptcy Court denying the Trustee's Motion to Dismiss be **AFFIRMED**, and the Trustee's appeal be **DENIED**.

## OBJECTIONS

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation, but must do so by **June 7, 2016**.  If specific written objections are timely filed, the District Judge assigned to this case will make a *de novo* determination in

accordance with Rule 72(b).  A party waives District Court review and appellate review by failing to file objections that are timely and sufficiently specific (the "firm waiver rule").  *Moore v. Astrue*, 491 Fed.Appx. 921, 923 (10th Cir. 2012); *In re Key Energy Res., Inc.*, 230 F.3d 1197, 1200-01 (10th Cir. 2000).

**DATED** this 25th day of May, 2016.

Paul J. Cleary
United States Magistrate Judge