# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: BOW D. BUSHYHEAD and D. LYNN BUSHYHEAD,  Debtors, | (Bankruptcy Case No. 13-12897-M) |

| | |
|---|---|
| SAMUEL K. CROCKER, UNITED STATES TRUSTEE, Appellant, v. BOW W. BUSHYEAD and D. LYNN BUSHYEAD, Appellees. | Case No. 15-CV-89-JED-PJC Case No. 15-CV-90-JED-FHM |

## OPINION AND ORDER

Before the Court is the Report and Recommendation (R&R) of United States Magistrate Judge Paul J. Cleary (Doc. 29), recommending that the Court affirm the decision of Chief United States Bankruptcy Judge Terrence L. Michael (Doc. 4-1 at 163-188) denying the United States Trustee's Motion to Dismiss the appellees' Chapter 7 filing "for cause" pursuant to 11 U.S.C. § 707(a). The Trustee filed a timely Objection (Doc. 30) to the R&R. Upon review of the R&R, the record on appeal, the bankruptcy court's Memorandum Opinion, the Objection to the R&R and the response thereto, and the parties' briefs, the Court finds and determines that the Objection should be overruled, and the bankruptcy court's determination should be affirmed.

I.      **Standards of Review**

In reviewing the decisions of bankruptcy courts on appeal, district courts review findings of fact for clear error and conclusions of law de novo. *Warren v. Ote*, 512 F.3d 1241, 1248 (10th

Cir. 2008); *In re Scrivner*, 535 F.3d 1258, 1262 (10th Cir. 2008). In such review, the Bankruptcy Code "must be construed liberally in favor of the debtor and strictly against the creditor." *Warren*, 512 F.3d at 1248.

A bankruptcy court's determination of what constitutes cause and its ultimate decision whether to dismiss for cause under 11 U.S.C. § 707(a) are reviewed for abuse of discretion. *In re Arenas*, 535 B.R. 845, 853 (B.A.P. 10th Cir. 2015); *see also In re Krueger*, 812 F.3d 365, 369 (5th Cir. 2016). Additionally, in reviewing the magistrate judge's R&R, this Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## II. Background

Neither party objects to the "Findings of Facts" in Judge Michael's Memorandum Opinion. (*See* Doc. 4-1 at 164-170). The facts are summarized below.

Bow Bushyhead and D. Lynn Bushyhead are husband and wife. In November 2007, the Bushyheads formed BB&D Concepts, LLC, an Oklahoma limited liability company, to operate a spa in Tulsa, Oklahoma. The Bushyheads invested $86,000 of their own money into the business and borrowed $345,000 from Comerica Bank for business purposes. The Bushyheads personally guaranteed the loan, and the United States Small Business Administration guaranteed eighty percent (80%) of the loan. The spa opened in November 2008 and lost, on average, between $4,000 and $10,000 per month. During the spa's operation, the business renegotiated the loan with Comerica several times, reducing the loan by nearly $100,000.

The spa closed on February 1, 2013, at which time the business was five months behind on its loan payments. Neither the business nor the Bushyheads made any further attempts to pay the

loan. When the spa closed and the Bushyheads stopped paying the loan, Mr. Bushyhead made approximately $8,800 per month and Mrs. Bushyhead drew a retirement income of $1,350 per month. These figures do not include any bonuses that Mr. Bushyhead may have earned or any other sources of income outside his employment.

Prior to March 2013, Mr. Bushyhead worked at Lone Star Trucking. In March 2013, he became the vice president of sales for Stone Trucking, earning an annual salary of $350,000. He also received a "signing bonus" of $62,100 and reimbursement for all expenses incurred as a member of The Oaks Country Club. Additionally, he was provided an additional six months' salary in settlement of litigation with his prior employer, Lone Star Trucking. Mrs. Bushyhead is retired, having formerly worked as a consumer price analyst for the United States Department of Labor, and she continues to receive retirement benefits. From February 22 to December 31, 2013, the Bushyheads' total income was $395,537.94. The Bushyheads made no payments on the spa loan during that time.

Around March 21, 2013, counsel for Comerica made efforts to settle the Bushyheads' debt; the Bushyheads made no attempt to settle. Mrs. Bushyhead testified that this was because she did not believe that Comerica would negotiate a settlement. Mr. Bushyhead testified that he did not use any of his income to pay towards the loan because the business "had been taking [money] from the family for years," and the Bushyheads "were tired of supporting a failing business that was never going anywhere." He used their income instead, he testified, to pay towards their children's educational expenses.

In addition to paying money toward their children's educational expenses, the Bushyheads spent extravagantly throughout 2013. Some of their expenditures included: $15,016.19 on furniture; $2,634 on jewelry; $12,784.37 on vacations; $24,374.03, for country club membership,

3

which was reimbursed by Mr. Bushyhead's employer; and $29,791.19 on food and dining. Additionally, Mr. Bushyhead leased a 2013 Mercedes 550V Sedan, valued at $101,430, paying $11,041.84 upon the signing of the lease with 24 additional monthly payments of $1,368.86. Lynn Bushyhead bought two horses for recreational purposes, at a total cost of $8,750; and the Bushyheads pay around $500 per month to board the horses.

In May 2013, Comerica Bank filed suit in Tulsa County District Court against the spa LLC, the Bushyheads, and a revocable trust held by the Bushyheads, to collect on the spa loan. The Tulsa County District Court held a summary judgment hearing on December 11, 2013 – the same day that the Bushyheads filed their Chapter 7 bankruptcy petition. At the December 11 hearing, the Tulsa County District Court stayed the action as to the Bushyheads (in light of notice of the filing of bankruptcy that day), dismissed the revocable trust without prejudice, and granted summary judgment to Comerica against the spa LLC. A journal entry of judgment against the LLC was filed the next day in the Tulsa County action, awarding Comerica judgment in the principal amount of $253,792.55, plus accrued interest in the amount of $5,153.51, late charges of $4,148.89, with future interest to accrue in the amount of $38.24271 per day.

The Bushyheads' original bankruptcy schedules listed $825,169 in assets and $332,152 in liabilities. They claimed $789,196 in assets – over 95% of the total assets listed – to be exempt. The spa loan liability that was guaranteed by the Bushyheads represented 79.8% of their total liabilities. That loan constitutes business debt. The Bushyheads' consumer debt included approximately $14,000 in credit card debt and $5,500 in student loans for their children. The Bushyheads initially listed $21,096 in monthly income and $16,004 in monthly expenses, leaving $5,092 in monthly net income. The Bushyheads' original schedules and statement of financial affairs contained several errors. The schedules were first amended in January, 2014 to include an

additional $219,603 in unsecured debt relating to the spa business; the single largest of these creditors was the Small Business Administration who guaranteed the Bushyheads' business loans. In February, 2014 the Bushyheads amended their statements to eliminate a credit card payment of $684 per month, after it was discovered that this expense was not actually being paid; the debtors also disclosed an interest in a revocable trust and the sale of their residence in 2012. In a further amendment, in March, 2014, the Statement of Financial Affairs was changed to disclose the litigation that resulted in payment of six months' salary to Mr. Bushyhead and to more fully disclose the Bushyheads' income in 2011, 2012, and 2013. In July 2014, the Bushyheads disclosed gifts made to their children in the year prior to their bankruptcy filing, their membership in The Oaks Country Club, and Stone's reimbursement of Mr. Bushyhead's country club expenses.

The Bushyheads listed in their bankruptcy schedules a savings account with a balance of $15,000. The Trustee learned during the first meeting of creditors that approximately $2000 had been removed from the account after the bankruptcy case filing. The Trustee demanded that the $2000 be returned and the entire $15,000 be surrendered to him. The funds were surrendered.

On May 9, 2014, the United States Trustee filed a motion to dismiss the bankruptcy case pursuant to 11 U.S.C. § 707(a), alleging that it had been filed in bad faith. (Doc. 4-1 at 96 *et seq.*). The Trustee argued that bad faith was evidenced by the following: (1) the Bushyheads could have used their excess monthly income of $5,776.00 to pay 100% of the debt listed on their Schedules D and F in approximately 60 months such that they would be entitled to relief under Chapter 13, rendering relief under Chapter 7 unnecessary (*id.* at 98, 110); (2) the Bushyheads filed the bankruptcy petition in an attempt to prevent the Tulsa County summary judgment hearing (*id.*); (3) they failed to make any effort to settle or repay any portion of the business loan with the $180,504 received from Stone as bonus and salary from March through August 2013 (*id.* at 99-

101); (4) the Bushyheads lived a lavish lifestyle (*id.* at 101-102); (5) they failed to voluntarily make full and complete disclosures in their bankruptcy schedules, doing so only after the Trustee demanded additional information that exposed errors in the original schedules and statement of affairs (*id.* at 102-104); (6) the Bushyheads were paying debts of family members and other creditors, while failing to pay on the Comerica spa loan (*id.* at 110-111); and (7) the Bushyheads' bankruptcy schedules inflated their expenses to disguise financial well-being (*id.* at 111). In response, the Bushyheads argued that "bad faith" was not an available basis for dismissal and their ability to repay debts was irrelevant under § 707(a). (*See id.* at 127-133).

The bankruptcy court denied the Trustee's motion to dismiss, entered judgment thereon, and thereafter entered an order discharging all of the Bushyheads' debts. The Trustee separately appealed the bankruptcy court's denial of its motion to dismiss and the order discharging the Bushyheads' debts, and those appeals were consolidated. (*See* Doc. 10).

### III. Discussion

#### A. Summary of the issues

The principal issue in this case is whether the debtors' conduct gave rise to "cause" for dismissal under § 707(a). Related to that issue are questions of (1) whether a debtor's alleged bad faith is sufficient to constitute cause for dismissal and (2) to what extent, if any, a debtor's ability to repay prepetition debts may be considered in making the "cause" for dismissal determination.

Judge Michael and Judge Cleary both provided thorough and reasoned analyses of these issues and concluded that the motion to dismiss was properly denied as applied to the facts in this case. Judge Michael ultimately concluded that "a bankruptcy case should be dismissed 'for cause' under § 707(a) only under one of the enumerated subsections or 'where the debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7.'" (Doc.

4-1 at 188). That statement is borrowed from *In re Kane & Kane*, 406 B.R. 163, 168 (Bankr. S.D. Fla.), and the United States Trustee argues that it construes too narrowly the circumstances under which bad faith conduct may satisfy "cause" for dismissal under § 707(a). The bankruptcy court also concluded that "the ability to repay pre-petition debt, standing alone, does not constitute cause to dismiss a case under § 707(a)." (Doc. 4-1 at 180).

The bankruptcy court expressed concerns with broad statements in other cases that would seemingly permit individual bankruptcy judges unconstrained discretion in determining what amounts to bad faith or cause for dismissal. (*See id.* at 177-179). Nonetheless, the bankruptcy court analyzed 15 different factors which some courts have applied in determining whether a debtor filed a Chapter 7 petition in "good faith" or whether a petition should be dismissed for cause under § 707(a). In doing so, the bankruptcy court noted that (1) many of the factors are merely different ways of describing an ability to repay pre-petition debt which, standing alone, is an insufficient basis for dismissal under § 707(a), and (2) other factors, when applied, do not weigh in favor of, or against, dismissal. (*See id.* at 175-186). The bankruptcy court then determined that the dismissal motion should be denied.

In the R&R, Judge Cleary also determined that bad faith is a basis for finding cause for dismissal under § 707(a), but that circumstances under which a Chapter 7 bankruptcy filing may be dismissed for cause should be somewhat narrowly limited. Judge Cleary thus found that the bankruptcy court employed the proper legal standard for determining "cause" under § 707(a) and recommended that this Court affirm the bankruptcy court decision to deny the dismissal motion.

A final issue in the appeal involves the propriety of the bankruptcy court's order granting the Bushyheads a discharge. The United States Trustee argues that, pursuant to Fed. R. Bankr. P.

4004(c)(1)(D), the bankruptcy court erred in granting the Bushyheads a discharge before "the final resolution" of the dismissal motion. (Doc. 30 at 12).

B.     Dismissal "for cause"

As noted, this appeal involves mostly business debt (the spa loan, which was nearly 80% of the debt listed by the Bushyheads), rather than consumer debt.[1] Thus, the United States Trustee moved to dismiss under 11 U.S.C. § 707(a), which is not limited to bankruptcies primarily involving consumer debts. The statute provides that:

> (a) The court *may dismiss* a case under this chapter only after notice and a hearing and *only for cause*, including—
>
>   (1) unreasonable delay by the debtor that is prejudicial to the creditors;
>
>   (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
>   (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a) (emphasis added).

The plain language of the statute reflects that the three enumerated examples under § 707(a) are illustrative rather than exhaustive. *See id.; see also* Sen. Report 95-989 at 94 ("These causes are not exhaustive, but merely illustrative"); 11 U.S.C. § 102(3) ("'including' [is] not limiting"); *Smith v. Geltzer*, 507 F.3d 64, 72 (2d Cir. 2007). Thus, bankruptcy courts may find "cause" beyond

---

[1] Where debts are "primarily consumer debts," a separate subsection of § 707 provides a basis for dismissing or converting a chapter 7 case to chapter 11 or 13 "if it finds that the granting of relief would be an abuse of the provisions of [chapter 7]." *See* 11 U.S.C. § 707(b). Section 707(b) provides a mathematical formula for determining whether a debtor has the ability to pay a significant portion of unsecured debts such that the court "shall presume abuse exists." *Id.* As it is undisputed in this case that the Bushyheads' debt was *not* primarily consumer, § 707(b) does not apply.

8

the bounds of the three enumerated examples listed in § 707(a). A bankruptcy court has discretion to determine what amounts to cause for dismissal under § 707(a). *In re Arenas*, 535 B.R. 845, 853 (B.A.P. 10th Cir. 2015) ("'Cause' is not defined in the Code. Determining what amounts to cause for dismissal under § 707(a) is within the court's discretion.").

In exercising its discretion to determine whether the Bushyheads' conduct amounted to "cause" for dismissal, the bankruptcy court in this case thoroughly explained its reasoning and application of relevant legal principles. (*See* Doc. 4-1 at 175-186). The United States Trustee argues that the bankruptcy court applied an improper legal standard. In doing so, the United States Trustee focuses on the bankruptcy court's statement that "a bankruptcy case should be dismissed 'for cause' under § 707(a) only under one of the enumerated subsections or 'where the debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7.'" (*See* Doc. 30 at 15-17, citing the "abhorrent to the purposes of Chapter 7" language). The United States Trustee also contends that certain of the Magistrate Judge's language ("conduct evidencing noneconomic motives") is also overly narrow and thus legally incorrect. Based upon a review of the cases relating to allegations of bad faith constituting "cause," this Court disagrees. Although Judge Michael and Judge Cleary did not use language identical to every other court's description of "cause," their analyses and reasoning are consistent with those cases and the language of the statute itself.

The bankruptcy court undertook a comprehensive analysis of the United States Trustee's argument for dismissal, discussing numerous factors that other courts have applied in determining whether cause for dismissal existed. (Doc. 4-1 at 175-186). The bankruptcy court found that the factors were mostly unhelpful because many of them redundantly consider a debtor's ability to repay debt, and the other factors do not weigh in favor of dismissal, as they present circumstances

that are common – and not improper – in many bankruptcy cases. (*See id.*). The United States Trustee does not challenge the facts upon which that analysis relied.

While the precise language used by each of the courts in considering what constitutes "cause" under § 707(a) is not identical, there is a general consensus among courts that the standard for finding "cause" under § 707(a) is stringent and requires evidence of conduct that may be described as "egregious," "extreme," or an "abuse" of the provisions of the Bankruptcy Code. [2] The ultimate determinations by Judge Cleary and Judge Michael that "for cause" dismissals should be granted only for the enumerated reasons or in other limited circumstances are consistent with the facts and legal principles stated in those cases set out in the footnote.

The United States Trustee also characterizes the bankruptcy court's decision as "[r]ejecting bad faith per se as cause to dismiss," and determining that a debtor's "ability to pay [is] never relevant to the cause inquiry." (Doc. 30 at 9). The undersigned does not view the bankruptcy court's decision as having applied such rigid or absolute legal standards. With respect to bad faith,

---

[2] *See, e.g.*, *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991) (dismissal under § 707(a) "should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence"); *In re Krueger*, 812 F.3d 365, 370, 374 (5th Cir. 2016) (stating that a petition may be dismissed for cause under § 707(a) for "any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process" and noting that "the record is replete with evidence that [debtor] filed bankruptcy for illegitimate purposes, misled the court and other parties, and engaged in bare-knuckle litigation practices, including lying under oath and threatening witnesses"); *In re Tamecki*, 229 F.3d 205, 208-09 (3d Cir. 2000) (referencing "egregious conduct" as would constitute cause); *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994) (applying a standard of "extreme misconduct falling outside the purview of more specific Code provisions"); *In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000) (requiring misconduct not covered by any specific section applicable to chapter 7); *In re Piazza*, 719 F.3d 1253, 1271-72 (11th Cir. 2013) (bad faith may be found where there is evidence of a "debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose or spirit of the Bankruptcy Code"); *In re McVicker*, 546 B.R. 46, 51 (Bankr. N.D. Ohio 2016) (noting that *Zick* "sets a high bar for dismissal" and denying a creditor bank's motion to dismiss the filing of debtors who had guaranteed a commercial bank loan and who had assets worth well over the amount of the debt).

10

the bankruptcy court extensively discussed the case law on that issue and ultimately applied the correct statutory standard, which is determining whether "cause" for dismissal existed under § 707(a). As noted, that standard is not defined in the Bankruptcy Code, and bankruptcy courts have discretion to determine what constitutes cause. *In re Arenas*, 535 B.R. at 853.

Also, the bankruptcy court did not hold that bad faith may not be considered in determining whether there is cause for dismissal. Instead, the court determined that the factors either improperly relied only upon a debtor's ability to repay debts or did not reflect egregious or unusual conduct when applied to the facts before him. He also relied upon *In re Kane & Kane*, 406 B.R. at 168, which expressly recognized that bad faith may serve as a basis for dismissal under § 707(a), but "only where the debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7." Thus, the bankruptcy court did not completely reject bad faith as a cause for dismissal or state that bad faith conduct could never satisfy § 707(a). Instead, the court fully considered the facts relevant to the Bushyheads and determined that those facts did not constitute cause for dismissal under § 707(a). (Doc. 4-1 at 175-186).

The bankruptcy court also correctly set forth applicable law concerning evidence of a debtor's ability to repay debts that are not principally consumer debts: "[o]ne thing seems certain: the ability to repay pre-petition debt, *standing alone*, does not constitute cause to dismiss under § 707(a). The legislative history says so. The cases that say a debtor must file his or Chapter 7 case in good faith say so." (Doc. 4-1 at 180 (emphasis added); *see also id.* at 173, n.22; *id.* at 182-186 [discussing factors 2, 5, 7, 8, 14]).

The bankruptcy court's statement of the applicable legal principle – that a debtor's ability to repay a debt, standing alone, is an insufficient basis for cause dismissal under § 707(a) – is consistent with governing law. Legislative history with respect to § 707(a) reflects Congress's

intent that ability to repay is not itself sufficient to satisfy the requirement for dismissal. *See* Sen. Rep. 95-989 (1978) (§ 707(a) "does not contemplate . . . that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory Chapter 13, in lieu of the remedy of bankruptcy."). Courts applying that statute have recognized that principle as governing law. *See, e.g., Perlin*, 497 F.3d at 371-72 ("we read the legislative history to mean that a debtor's ability to repay his debts out of disposable income is not a sufficient reason to dismiss a bankruptcy petition under section 707(a) . . . While the legislative history makes clear that a debtor's ability to repay his debts is inadequate cause for dismissal, we do not read the history as prohibiting a bankruptcy court from considering a debtor's substantial income and expenses in determining whether the debtor filed his bankruptcy petition in good faith."); *In re McVicker*, 546 B.R. at 63; *In re Snyder*, 509 B.R. 945, 951 (Bankr. D.N.M. 2014). Thus, ability to repay may be considered, but it is not alone a sufficient cause for dismissal under § 707(a).

For the foregoing reasons, the bankruptcy court's analysis of the Bushyheads' ability to repay debts was not legally incorrect or factually erroneous. As noted by the bankruptcy court, the Bushyheads sought Chapter 7 relief to discharge several debts, the largest of which was business debt related to the failed spa. While not every owner of a closely held business might spend as the Bushyheads did, the bankruptcy court's factual findings – that their conduct was not egregious, unusual, or abhorrent to the purposes of Chapter 7 – are not clearly erroneous.

### C. Discharge before conclusion of appeal

In its Memorandum Opinion on the dismissal motion, the bankruptcy court noted that "[n]o creditor appeared in this case in support of the Motion [to Dismiss], and no one has sought to deny the Bushyheads their discharge or have a particular debt declared non-dischargeable using the

12

traditional route (i.e. an adversary proceeding)." (Doc. 4-1 at 187).[3] After denying the United States Trustee's dismissal motion, the bankruptcy court entered Judgment. (Doc. 4-1 at 189). The next day, the bankruptcy court entered an order discharging the Bushyheads. (*Id.* at 190). On appeal, the United States Trustee asserts that "Rule 4004 barred the entry of the discharge order because the motion to dismiss was still pending." (*See* Doc. 14 at 44). In the Objection to the R&R, the United States Trustee contends that the bankruptcy court erred by entering the discharge order before the completion of "all levels of appellate review" of the ruling on the dismissal motion. (Doc. 30 at 27).

Given that the Court has determined that the bankruptcy court did not err in denying the dismissal motion, it is questionable whether it is even necessary to determine the discharge issue. *See In re Close*, 384 B.R. 856, 871 (D. Kan. 2008) ("Given its aforementioned decision affirming the bankruptcy court's order denying the Trustee's motion to dismiss, the Court questions the need to address this issue."). In any event, the Court also finds no error in the bankruptcy court's discharge order, which was entered after the ruling and judgment on the dismissal motion, because the motion to dismiss was then no longer pending, and discharge was not prohibited by the language of Rule 4004(c)(1)(D).

Rule 4004(c)(1)(D) provides that "the court shall not grant the discharge if: . . . (D) a motion to dismiss the case under § 707 is pending." Fed. R. Bankr. P. 4004(c)(1)(D). Once the bankruptcy court denied the dismissal motion by entry of its Memorandum Opinion and Judgment thereon, the motion to dismiss was no longer pending. While the United States Trustee subsequently

---

[3] However, Comerica Bank filed a statement in support of the United States Trustee's appeal. (Doc. 23). In that filing, Comerica argued that it "will lose its ability to recover virtually all of the over $267,645 owed to it by the Bushyheads – a debt that they have never provided any basis for contesting and which they could easily repay." (*Id.* at 6). As noted, ability to repay is simply not a sufficient basis, standing alone, to dismiss for cause under § 707(a).

appealed the denial of its dismissal motion, the motion to dismiss was itself not pending, and thus discharge was not prohibited by Rule 4004(c)(1)(D).

The United States Trustee cites general case law regarding the pendency of a case or action. However, the relevant consideration under Rule 4004(c)(1)(D) is whether the *motion* was pending after the bankruptcy court ruled on it and entered Judgment. The United States Trustee has not cited any authority supporting its position that the motion was still pending after the bankruptcy court ruled on it. Courts that have considered the specific issue have determined that, notwithstanding an appeal of a bankruptcy court's ruling on a dismissal motion, the dismissal motion is no longer pending after the bankruptcy court has ruled and entered judgment on it. *See In re Dudley*, 431 B.R. 703, 705-06 (Bankr. W.D. Va. 2010); *In re Close*, 384 B.R. at 871. This Court agrees and finds no error in the bankruptcy court's discharge order.

## IV. Conclusion

For the foregoing reasons:

1. The United States Trustee's Objection (Doc. 30) is **denied**;

2. The Magistrate Judge's Report and Recommendation (Doc. 29) is **accepted**; and

3. The bankruptcy court's orders denying the United States Trustee's motion to dismiss and discharging the Bushyheads (Bankruptcy Docket, Doc. 56, 57, 58; *see* District Court Docket, Doc. 4-1 at 163-190) are hereby **affirmed**.[4]

SO ORDERED this 28th day of April, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[4] Because this Opinion and Order disposes of both of the appeals that have been consolidated, it shall be filed in, and shall terminate, both Case Nos. 15-CV-89-JED-PJC and 15-CV-90-JED-FHM.

14